# STATE OF MICHIGAN

# COURT OF APPEALS

ATTORNEY GENERAL,

        Appellant,

v

MICHIGAN PUBLIC SERVICE COMMISSION,

        Appellee,

and

CONSUMERS ENERGY COMPANY,

        Petitioner-Appellee.

UNPUBLISHED
April 30, 2015

No.  317434
Public Service Commission
LC No.  00-017087

---

MICHELLE RISON, ANN DEROUIN,
MITCHELL DEROUIN, BILLIE J.
PREKLESIMER, JOYCE HORNESS, MARCUS
HORNESS, MIKE KEMPF, SANDY KEMPF,
DAN MARTIN MILLS, CHERYL MCKINNEY,
GLORIA GARDNER, KERRY KRENTZ,
HEATHER WITKOWSKI, CHRISTINE HUNT,
SCOTT BRASPENNINX, and PAM DAZEY,

        Appellants,

v

MICHIGAN PUBLIC SERVICE COMMISSION,

        Appellee,

and

CONSUMERS ENERGY COMPANY,

        Petitioner-Appellee.

No.     317456
Public Service Commission
LC No.  00-017087

---

-1-

Before: O'CONNELL, P.J., and FORT HOOD and GADOLA, JJ.

PER CURIAM.

In these consolidated cases, the Attorney General and Michelle Rison, et al., appeal a June 28, 2013 order issued by the Michigan Public Service Commission (PSC) approving an application by Consumers Energy Company (Consumers Energy) for a rate increase to continue funding, among other things, its advanced metering infrastructure (AMI) program, and approving tariffs for customers who elect to opt-out of the AMI program. For the reasons below, we affirm the stipulation and order for the rate increases in Docket No. 317464, but because of the numerous issues raised on appeal in Docket No. 317456 concerning tariffs for customers who elect to opt-out of the AMI program, we remand those issues to the PSC and direct the PSC to conduct a contested case hearing on the opt-out tariff. We direct the PSC to issue a detailed opinion with sufficient facts and conclusions of law that allows this Court to review the entire scope of the unusual opt-out tariff.

## I. BACKGROUND

Several years ago, Consumers Energy began implementing an AMI[1] program in Michigan. On November 4, 2010, the PSC issued an order in Case No. U-16191 that approved Consumers Energy's pilot AMI program, but required Consumers Energy to meet certain conditions, such as providing information on the benefits and costs of the program, before approving full deployment of the AMI program. In *In re Application of Consumers Energy Co to Increase Rates*, unpublished opinion per curiam of the Court of Appeals, issued November 20, 2012 (Docket Nos. 301318 and 301381), this Court affirmed the PSC's decision regarding Consumers Energy's pilot AMI program. On June 7, 2012, the PSC issued an order in Case No. U-16794 authorizing Consumers Energy to proceed with Phase 2 of its AMI deployment program. In that case, the PSC adopted $44.8 million in expenditures for the AMI program in Consumers Energy's rate base.

On September 19, 2012, Consumers Energy filed an application requesting rate relief in the case underlying this appeal, Case No. U-17087, to cover, among other things, its ongoing investments associated with the AMI program. In addition, Consumers Energy sought approval of opt-out tariffs for customers who did not wish to participate in the AMI program. On October 19, 2012, an administrative law judge (ALJ) granted intervenor status to the Attorney General.

On May 7, 2013, the parties filed a settlement agreement in which they agreed to an annual rate increase of $89 million. However, in the agreement, the Attorney General reserved two issues for future resolution, including (1) a request to the PSC "to direct Consumers Energy to suspend the [AMI] program," and (2) an objection "to the amount of the 'opt-out' fee." The

---

[1] An AMI meter, also known as a smart meter, is capable of collecting near-real-time data on a customer's energy usage and reporting the data to the utility at frequent intervals. *In re Applications of Detroit Edison Co*, 296 Mich App 101, 114; 817 NW2d 630 (2012).

PSC entered an order on May 15, 2013, approving the settlement agreement. Thereafter, the Attorney General challenged the PSC's continued support of Phase 2 of Consumers Energy's AMI program and challenged Consumers Energy's application for approval of its opt-out tariffs.

In response, Consumers Energy argued that it prepared an updated business case analysis for its AMI program in March 2012, and that the analysis indicated a 20-year positive net present value (NPV) of $42 million for the AMI program. Consumers Energy noted that the Attorney General also sought suspension of its AMI program in Case Nos. U-16191 and U-16794 on the ground that the cost/benefit analysis used in each case was flawed, but that the PSC rejected the Attorney General's request in each case. The Attorney General argued that the PSC should suspend Consumers Energy's AMI program until a cost/benefit analysis showed that the program would bring value to customers. The Attorney General asserted that its analysis showed that the AMI program had a negative NPV, and that Consumers Energy's testimony regarding savings from the AMI program was speculative.

On June 28, 2013, the PSC issued an order approving Consumers Energy's continuation of the AMI program and approving Consumers Energy's opt-out tariffs. The Attorney General (Docket No. 317434) and Michelle Rison, et al. (Docket No. 317456)[2] now appeal from the PSC's June 28, 2013, order.

## II. STANDARD OF REVIEW

The standard of review for PSC orders is narrow and well defined. Pursuant to MCL 462.25, all rates, fares, charges, classifications and joint rates, regulations, practices, and services prescribed by the PSC are presumed, prima facie, to be lawful and reasonable. *Mich Consol Gas Co v Pub Serv Comm*, 389 Mich 624, 635-636; 209 NW2d 210 (1973). A party aggrieved by an order of the PSC has the burden of proving by clear and satisfactory evidence that the order is unlawful or unreasonable. MCL 462.26(8). To establish that a PSC order is unlawful, the appellant must show that the PSC failed to follow a mandatory statute or abused its

---

[2] Appellants in Docket No. 317456 were not parties to the proceedings below. These appellants claim entitlement to an appeal as of right under MCL 462.26(1), which states the following:

> Except as otherwise provided . . . any common carrier or other party in interest, being dissatisfied with any order of the commission fixing any rate or rates, fares, charges, classifications, joint rate or rates, or any order fixing any regulations, practices, or services, may within 30 days from the issuance and notice of that order file an appeal as of right in the court of appeals. . . .

Appellants claim they are parties in interest under the statute because they are customers of Consumers Energy who will be required to pay tariffs under the opt-out program. The phrase "party in interest" in MCL 462.26(1) is undefined in the statute, and it is unclear whether this phrase permits any *person* with an interest in the proceedings to file an appeal as of right, or whether it requires that such a person first be a *party* to the proceedings to claim such an appeal. On remand, the PSC shall determine if these parties have standing to proceed below.

discretion in the exercise of its judgment. *In re MCI Telecom Complaint*, 460 Mich 396, 427; 596 NW2d 164 (1999). An order is unreasonable if it is not supported by the evidence. *Associated Truck Lines, Inc v Pub Serv Comm*, 377 Mich 259, 279; 140 NW2d 515 (1966).

A final order of the PSC must be authorized by law and must be supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28. A reviewing court gives due deference to the PSC's administrative expertise and is not to substitute its judgment for that of the PSC. *Attorney General v Pub Serv Comm No 2*, 237 Mich App 82, 88; 602 NW2d 225 (1999). "Whether the PSC exceeded the scope of its authority is a question of law that we review de novo." *In re Complaint of Pelland against Ameritech Mich*, 254 Mich App 675, 682; 658 NW2d 849 (2003).

### III. DOCKET NO. 317434

In Docket No. 317434, the Attorney General argues that the PSC erred in approving the continuation of Phase 2 of Consumers Energy's $750 million AMI program because the record lacked competent, material, and substantial evidence demonstrating that the costs of the AMI program outweighed its benefits. The PSC first argues that the Attorney General lacks standing to challenge the June 28, 2013, order in this case. A party must be aggrieved by a lower court's decision in order to have standing to bring an appeal from that decision. MCR 7.203(A); *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 290-291; 715 NW2d 846 (2006). "To be aggrieved, one must have some interest of a pecuniary nature in the outcome of the case, and not a mere possibility arising from some unknown and future contingency." *Federated Ins Co*, 475 Mich at 291 (quotation marks and citation omitted).

MCL 462.26(1) provides that "any common carrier or other party in interest, being dissatisfied with any order of the commission fixing any rate or rates, fares, charges, classifications, joint rate or rates, or any order fixing any regulations, practices, or services, may within 30 days from the issuance and notice of that order file an appeal as of right in the court of appeals." The Attorney General gave notice of intervention and was granted intervenor status in this case below. The Attorney General had the statutory right to intervene to represent the interests of the people of the state, MCL 14.28, and he stated that he intervened because the case would affect rates paid by Consumers Energy's customers. The June 28, 2013, PSC order approved, among other things, opt-out tariffs for Consumers Energy's customers. Thus, the Attorney General was a party in interest with standing to appeal the order under MCL 462.26(1).

Although the Attorney General has standing to bring this appeal, we conclude that the stipulation to the $89 million increase forecloses any objection that the Attorney General has to the rate increase.

As part of Case No. U-17087 underlying this appeal, the Attorney General was permitted to contest Consumers Energy's requested rate increase associated with the 2013 through 2014 portion of Phase 2 of its AMI program. See MCL 462.26(1). However, we determine that the Attorney General, on appeal, may not contest the rate increase because the parties stipulated in the May 7, 2013, settlement agreement to an $89 million revenue increase that covered, in part, Consumers Energy's ongoing investments in its AMI program. The agreement stated the following:

-4-

The Attorney General has requested the Commission to direct Consumers Energy to suspend the Advanced Metering Infrastructure ("AMI") program, and in the event the program continues, has objected to the amount of the "opt-out" fee. These issues are not resolved as part of this settlement. The parties request the Commission to address these issues based upon the initial and reply briefs filed pursuant to the schedule established by the Administrative Law Judge in this case. *The parties agree that the $89.0 million annual revenue increase and associated rates specified in this Settlement Agreement shall not be affected by the Commission's ruling on this issue. . . .* [Emphasis added.]

Because the Attorney General stipulated to the $89 million rate increase that covered, in part, the 2013 through 2014 portion of Phase 2 of Consumers Energy's AMI program, the Attorney General has not presented any issues warranting relief.

## IV. DOCKET NO. 317456

### A. AUTHORITY TO APPROVE AMI OPT-OUT PROGRAM

Appellant customers contend that the PSC lacked the statutory authority to impose an opt-out program on customers who do not wish to participate in the AMI program, and that the PSC should have considered an opt-in program instead. Because this issue was not raised below, we review the unpreserved claim for outcome-determinative plain error. *In re Application of Consumers Energy Co*, 278 Mich App 547, 568; 753 NW2d 287 (2008).

The PSC possesses only those powers conferred upon it by the Legislature, and thus has no authority to make management decisions on behalf of utilities. *Union Carbide Corp v Pub Serv Comm*, 431 Mich 135, 148-150; 428 NW2d 322 (1988) (holding that the PSC lacked authority to forbid the operation of a facility). However, under MCL 460.6(1), the PSC has broad authority to regulate reasonable rates for all public utilities. Within its ratemaking authority, "[t]he PSC has discretion to determine what charges and expenses to allow as costs of operation." *Ford Motor Co v Pub Serv Comm*, 221 Mich App 370, 375; 562 NW2d 224 (1997).

In this case, the PSC's June 28, 2013, order approved tariff rates for customers who elected either to retain a standard meter or to replace a transmitting AMI meter with a standard meter. The approved rates were based on the PSC's determination of the actual costs associated with maintaining equipment and services for customers with non-transmitting meters. A decision to impose charges and expenses based on a utility's costs of operation is well within the ratemaking authority of the PSC. *Ford Motor Co*, 221 Mich App at 375. Accordingly, the PSC did not exceed its statutory authority.

### B. IMPOSITION OF FEES ON OPT-OUT CUSTOMERS

Appellant customers argue that the PSC's approval of the tariffs requiring customers who opt-out of the AMI program to pay a one-time charge of either $69.39 or $123.91 and a monthly charge of $9.72 was unjust, unreasonable, and unsupported by evidence in the record. At oral argument before this Court, the parties raised numerous arguments regarding whether the tariff amounts approved by the PSC represented the actual costs associated with continued use of analog meters, and whether any of these costs were already accounted for in the utility's rates.

-5-

Unfortunately, it appears that these issues were given only cursory analysis in the PSC lower court record. We conclude that the record on this issue is inadequate to support an informed decision by the Court at this time. Accordingly, we remand this issue to the PSC to conduct a contested case hearing on this significant issue.[3] The parties are entitled to present their positions, and the PSC shall issue a written opinion on its findings of fact and conclusions of law.

Docket No. 317434 is affirmed. Docket No. 317456 is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Peter D. O'Connell
/s/ Karen M. Fort Hood
/s/ Michael F. Gadola

---

[3] On remand, the PSC should clarify the purpose and nature of the opt-out tariff by addressing whether the tariff represents a reimbursement for costs of service, or whether the tariff constitutes something more akin to a tax, sanction, or penalty imposed upon customers who choose to opt out of the AMI program.